Good morning. Larry Gabriel on behalf of the trustee. May it please the court. In very simple terms, the district court erred in failing to present the appropriate test in addressing the issues of whether or not a debt should be re-characterized. In his decision, the court limited his analysis to the four corners of the promissory note. Your theory was that there were a series of cases arising in the usury context that were relevant, right? Yes, Your Honor. Why is this a usury context? It is not a usury context. It is a context of what elements or what factors do you look at for re-characterization of debt to equity. In the Ninth Circuit in California, this is a relatively new concept. In fact, this case was the first case, the first time we were up here in Fitness Holding 1, was the first time that this court ruled that you could re-characterize debt to equity. Previously, there was a back decision that was relied on by a lot of the courts that said you could not re-characterize. So that was the first time we were up here and this court rightly determined that you could re-characterize in line with all of the other circuit decisions. The problem was going back down. What the court said is that we have to look to California law for those elements. There are no cases in California that directly deal with it. And so by analogy, we went to the usury cases which address the issue of re-characterization. Endless cases under California law saying if you lend me $1,000 and I sign a note promising to pay, that it's debt and it's an enforceable contract. That's correct, Your Honor. But that's not in the context of the equitable principles that are involved within the bankruptcy court, and that is what is this transaction in reality. This is not an enforcement of a promissory note case. This is what is the claim in the bankruptcy and how do you look at it. And there was very- Go ahead. I'm sorry. Judge Kristen has a question. I read In Re Fitness Holdings much differently. There's a footnote in here that says the term state law is often used expansively to refer to all non-bankruptcy law that creates substantive claims. But my understanding is that your theory is really quite confined to a usury theory. But it seems like all that we're really talking about here is to try to figure out whether the debt was legitimately a debt. And so I certainly agree with you that just because somebody's papered something with a promissory note isn't the end of the analysis. We have to look. That's the whole point. We're trying to figure out whether this is a legitimate debt. So why is it that you, if you did, confined your analysis to usury as opposed to any of the other broader principles where we look to see whether a transaction was fraudulent? I agree with you, Your Honor. We should not have done that. We read the decision and we're trying to fit this square packet around whole, if you will. And in going back and in preparing for argument, in this case, there was a recent decision, which I think, well, by this court, as a matter of fact, the Dowell case, which went ahead. It actually was coincided with the prosecution of our case about the same time, a little bit later. And the Dowell case talked about all of the various factors that you look at for recharacterization. Judge Wilson wrote the opinion on that case, and I think he did a very good job. Now, the outcome is obviously a factual determination, which you have to consider. What's interesting about the Dowell case, which this court affirmed on appeal, and what was interesting about the affirmance, it was just a short order, not published, but what was interesting about it is the parties below stipulated to the law, if you will, as to how to apply the various issues with respect to recharacterization. This court affirmed it. I assume that the court, if this court thought that those elements were not appropriately, the court may have not accepted the stipulation. So I think we have some precedent in the Dowell case as to what factors you have to look at. Well, tell us exactly what you think the test is. Okay. I'm a bankruptcy judge, and tell me the test you think is the operative one for distinguishing debt and equity. Sure. There are the various factors that go into – I'm trying to use my new thing, and I don't know if I'm going to be able to use it. We all have the same problems. We are of an age where we should be sympathized with you. You're supposed to be here some place. I was bragging about how good I was going to do in this, and maybe I'm not doing it. So – Well, I want to dissent from the age-related comment. I don't think I'm joining that. Sorry. Do I get an exemption? I'm closer to him than I am to her. You should go ahead before I get myself into more trouble. Yeah. Well, in the Dyewood – I'll do it by memory. What's the test? I'm a bankruptcy judge. There's a number of tests. What was the transaction? Was it a promissory note? Did they enforce the promissory note? What were the facts surrounding it? Why did they get – That's not a test. That's the multi-factor test under the tax code, is it not? Isn't that what you're talking about? It's very similar. Now, did they adopt all of them? Again, I go back to Dyewood. There was a whole number of elements. But if you're looking at the transaction in and of itself as a whole, you have to look at not only the paper part of it, but how they executed it, what was the intent of the participant to do it. But don't you start with the contract? You started your argument by saying that the court below erred by confining itself to the four corners of the document. But doesn't it make sense to look at what the contract says in order to determine whether or not it meets any of those factors? I think you start there. Okay. But that's not the end of the discussion. But we wouldn't say in state court – forget bankruptcy for just a minute. Under state law, we wouldn't look at a promissory note, look at a transaction and say, because there's not a usurious interest rate, this must be a legitimate transaction. It can't be fraudulent. Right? That would be the end of the analysis. Right. And in any fraud type of transaction, you always look at the factors that are surrounding it. Why did they enter into it? What was the execution of it? What were the representations? I'm not sure that's right. I mean, even under California's, I'll call it, different parole evidence rule, the first thing that the court does is to look at the language of the contract to determine whether it's ambiguous. And under California's parole evidence rule, as I understand it, you can introduce extrinsic evidence in order to convince the court that the language is susceptible to a different interpretation than perhaps what the court is reading. And if the court agrees that the language could be interpreted that way, then extraneous evidence is admissible under the parole evidence rule. But if the court says, no, in the face of this language, I don't see that interpretation as being reasonable, then you stick with the language of the contract. Isn't that how the parole evidence rule works in California? That is how it would work if you were interpreting the terms of the contract. What is more basic to the rule of law than enforcing a valid written contract? Without having a trial. A bankruptcy judge would never get his or her work done if we had this multi-faceted test about whether a promissory note was a promissory note or something else. Bankruptcy courts would grind to a halt. We're not denying that there was a promissory note, Your Honor. We're denying the enforceability of it in the context of the equitable principles of bankruptcy. Why wasn't this note enforceable? It cannot be a claim because it wasn't a true debt instrument. Let's take a step back. What was it about this contract that made it not a true debt instrument, first of all? Okay. Again, what is the underlying transaction? What was the intent of the parties when they did it? What the court, what we haven't discussed is the bankruptcy principles. Bankruptcy is an equitable proceeding. It is, this is a claim, if you will, the contract could be a claim in the bankruptcy, but this is a claim that is given to the trustee to look at and recover assets. And in the context of the fraudulent conveyance claims that we have presented, in the context of the recharacterization, in the context of the breach of fiduciary duty claims, and I see that my time is up, so I'm going to. Do you want to reserve some time? I do. Okay. Go ahead and finish your point. Yeah. And in the context of the breach of fiduciary duty claims, which this Court, I believe, in Fitness-Holy One said were good claims, you take all of that together and then you look at it and say, what was this transaction about, and can the estate recover those assets that were wrongfully taken away from it? And that's what this case is about. It's not the enforcement of the promise, sorry. And the district court missed that and never considered any of these other factors. In looking at the recharacterization, and I'd like to reserve the rest of my time. I will, but wouldn't you concede that if these are truly debts, then the trustee can't recover these assets? They would then become, either whether secured or unsecured, they'd be claims in the bankruptcy estate. I would concede if they were truly, if the instrument was a true debt, it was, but it wasn't. Okay. But is your claim that the instrument was not a true debt instrument, or is your claim that the behavior of the Hancock people made it equitable to not treat this as a debt instrument? Which are you saying? I am saying that it is a sham transaction structured so that the owners of this company could have figured out a way to get their money back ahead of all of the creditors. And that is wrong. What they did was wrong. They capitalized. The unsecured creditors? The unsecured creditors. Okay. Thank you. We'll let you reserve the rest of your time. Thank you. Thank you. Good morning. May it please the Court. Brad Schneider, Mungertols and Olson for Hancock Park and Michael Portique. I have eight minutes, and I'm dividing the rest of my time with Mr. Hirshman and Mr. Eldon. Your Honor, the Court asked what is the test for recharacterization. I think that the Court, in its first opinion, answered that question. The Court held the question is whether there is a right to payment under applicable State law. And here we agree that the applicable State law is California law. And the Court expressly rejected the idea that equitable principles of bankruptcy, rules of the Court's own creation, Federal common law test for recharacterization are permitted to recharacterize an otherwise enforceable debt instrument into equity. And I submit that is what the trustee is urging the Court to do here. He says it's not an enforceable debt instrument. He's not looking at the four corners of the instrument. He thinks that it's a sham prom note. What's your response to that? My response is sham is a pejorative term, but if you look at it's not an argument. It's not a legal principle. If you look at the terms of these notes under a principle. Well, fraud is a legal principle, Counsel. And so I appreciate that the argument that was raised, I think, on remand was, it seems to me, very narrow. It went straight to usury. But if you take a step back, and I think that point was conceded this morning, but if you take a step back and look at the remand order, it said go look under State law here, California State law, to determine whether or not this is a legitimate debt. I agree, Your Honor. And I think it is a mischaracterization of the district court's analysis to suggest that it confines itself to the four corners of the contract. Okay. That's helpful to me. Can you tell me what language should I look at there? You can look at, starting at ER 12, which is where you can find the district court's opinion. After going through and analyzing these contracts, which is what the asserted right to payment here arises from, is a contract, so the court applies contract law. It concludes as a matter of contract law that these notes create a right to payment under applicable California law. The court then says it doesn't stop its analysis there. It considers the arguments, the assertions, the allegations that the trustee makes in the complaint, and it concludes correctly that none of these allegations, for example, forbearance. Counsel, you're stating your conclusion, but can you give me language that you want me to really hone in on? Forgive me for interrupting, but I understand your concerns. I understand your conclusion. Well, we can ‑‑ It did look to the four corners of the document and look to see whether there were ambiguous in terms and look to usury. But I'm taking a step back more to the 30,000-foot level to see whether or not the court construed its mission on remand that narrowly or whether it considered other theories by which the transaction might be deemed fraudulent. So let me give you a new page citation, ER 14, the first full paragraph. I'm on it. Nor did the circumstances, quote, beyond the surface of the transaction, end quote, change this result. The allegations at Fitness Holdings was perpetually in default and that Hancock Park did not demand or receive any payment until June 2007 do not plausibly suggest that the parties intended for Hancock Park have no right to payment. So the court there did address the allegations beyond the four corners of these notes. It considered the ‑‑ and what are those allegations? The allegations that there was forbearance. In other words, Hancock Park did not immediately ‑‑ The note addressed forbearance. The parties struck a deal on forbearance, right? I couldn't say any better myself, Your Honor. Yes, there is a non‑waiver clause in the contract. And I think that the big picture is under any test, and we can dispute what the test is, is that do we apply contract law principles? Do we invoke the substance over form? But what complicates your position, it seems to me, is that the parties were arguably one party. Well, Your Honor. Folks who were dealing with themselves. They were on both sides of the transaction. And yes, Hancock Park was the parent corporation of Fitness Holdings, the debtor. I agree with that. But this is a ‑‑ it's an entirely common and perfectly lawful scenario for a parent corporation to provide debt financing to its wholly owned subsidiary. And I would argue that particularly in this context, you know, they cite usury cases and there was discussions of usury. Well, what can we say about usury? Usury is illegal in California. It is a bad thing. Debt financing by an insider or a parent corporation to a struggling subsidiary is a good thing. It's something that we should encourage and not deter with standards of recharacterization that are amorphous and fail to provide objective guidance. And here I would ask, what more could Hancock Park have done to memorialize its right to payment under these notes? It executed the notes, detailed terms with rights to payment. It accounted for the interest that was owed. And in the signature irony of this case, when there is a claim that is being made by the trustee that there was no intent to treat these as equity, well, what is the transaction that is being challenged here? It is a repayment of the Hancock Park notes in the June 2007 refinancing. And that repayment was funded from a loan from a third party in an arm's-length transaction, Pacific Western Bank. There's no allegation that they were doing anything other than looking out for their own self-interest, and they agreed that $11.9 million of these funds could be used to repay these debt instruments. And so what I submit the trustee is doing here, he's creating a catch-22 situation for parent corporations that want to provide debt financing or have provided debt financing to their subsidiary. On the one hand, if the parent does not immediately enforce its right to payment upon a default by its subsidiary, well, the trustee is going to say, that's evidence that you didn't really view this as debt. We're going to recharacterize your debt. On the other hand, if you do enforce your right to repayment, as we did, as Hancock Park did in the June 2007 refinancing, the trustee will turn around and sue you for breach of fiduciary duty and fraudulent transfer. This is not the right result. There's nothing about this transaction that supports a plausible inference  under Kevin Mulholland. I'm going to stop and hand it over to Mr. Hershman. Thank you, Your Honors. Good morning, Your Honors. Ralph Hershman on behalf of Defendant Kenton Van Harden, who is sued only on the ninth claim for breach of fiduciary duty in his capacity as an officer and director of the debtor. I'm adopting without elaboration the arguments of Mr. Schneider with respect to the effect that recharacterization is not plausibly pled in the First Amendment complaint. The point I wish to make is that because that is the case, the First Amendment complaint fails to allege a cause of action for breach of fiduciary duty. Under Delaware law, directors and officers never owe fiduciary duties to creditors, whether the company is solvent in the zone of insolvency or actually insolvent. Actual insolvency provides creditors with standing to assert derivative actions, claims, but it still necessitates harm to the debtor, not to the individual creditors. And though we're in our sixth round of briefing on this issue now, the appellant still has this wrong. At pages 24 and 25 of his opening brief, he states, harm to creditors is harm to the corporation when the corporation is rendered insolvent and gives rise to a claim brought by or in the name of the corporation. Here is the district court found. The factual allegations actually preclude a finding of injury to the debtor, including, for example, that the 2007 refinancing lowered borrowing costs, extended maturities, increased working capital, preserved the debtor's ability to borrow millions on an unsecured basis in the future, and increased the debtor's ability to obtain additional borrowing concessions in the future in the form of new guarantees by Hancock Park. And all of this was done with a negligible effect on the balance sheet of the debtor. Thank you. Good morning. May it please the Court. David Eldon, ELDA, and I'm Parker Milliken for Appellee Pacific Western Bank. Very briefly, as the Court is aware, there was only one claim alleged against my client, the bank, the outside third-party lender here, which was that it aided and abetted a breach of fiduciary duty by the two individual defendants represented by counsel at my table, Mr. Van Harten and Mr. Fortique. So I have three very straightforward arguments. The first is that, to state the obvious, if there was no adequate allegation of breach of fiduciary duty against the individual corporate insider defendants, a fortiori, there's been no aiding and abetting claim pleaded against my client, the bank. It could not have aided and abetted a breach of fiduciary duty if the breach of fiduciary duty has not been properly pledged to start with. I leave all of that to the arguments presented by counsel, but just very quickly, I would point out, in response to the point made by Judge Kristen about, in essence, look, can't we step back and say, yes, there were promissory notes, but surely that's not conclusive. What if the parties simply papered an equity deal with completely bogus promissory notes? Looking at that from a procedural perspective, a pleading perspective, I found persuasive the points made in Mr. Schneider's opening brief or response brief at page 22, where he pointed out simply that conclusory statements, which is what we have in the complaint, that these documents actually represented an equity transaction and were merely a cloak. Conclusory statements are not enough, and particularly that plausibility, plausible allegations that these notes really represented equity, which is what's required under the Court's prior decision in this case, cannot be inferred from facts that have a, quote, obvious alternative explanation, which is not consistent with liability. Again, not my brief, but I found Mr. Schneider's point on that issue persuasive. Here, when you get down to the nitty-gritty and ask, what is it that the bankruptcy trustee thinks demonstrated that these were really equity, the bankruptcy trustee points to virtually nothing other than the fact that Hancock Park did not pull the trigger, did not enforce the instant the debtor went into default under its notes. Well, of course not. It's its own subsidiary. Well, he says more than that. He says they never made a payment. And they weren't going to make a payment, and they weren't going to be able to make a payment. I mean, he paints a different picture, to be sure. Which is why they went out and borrowed from my client, the bank, precisely to repay those notes or to repay the outstanding interest and a big chunk of the principal. My concern is with the 65 million people living in the Ninth Circuit, and we have to be very careful about our precedent. And as you say, this is a new and unexplored area. I think the Ninth Circuit's prior opinion in this case had a much broader charge on remand than what the trustee perhaps briefed. And if they didn't brief the argument, they didn't brief the argument. But I'm just trying to be really clear about the legal principle, and it is mysterious to me that the bankruptcy court would have been limited, if that's your position, would have been limited on remand to looking to the four corners of a prom note or considering usury. And again, I think this is not my point. I see my time has been consumed by others. Sorry about that, but you did raise it. No, I got up here. I was supposed to have six minutes, and it started with much less than that. What usually happens when you try to split in three ways, but a lesson for the future. Go ahead. Really, two other points. Even if a breach of fiduciary duty was properly pled, aiding and abetting was not pled with anywhere near the sufficiency needed to plead against my client, whether under Delaware law or California law. And finally, and most importantly, in pari delicto, which I briefed at length. And that really is an absolutely clear point of law in every court that's determined it, whether California state courts or the courts of appeal across the country. And I would like to bring the Court's attention to three cases this year that have come up, since briefing in this case closed, which are precisely, you know, deal with this exact point. Did you supply these in a 28-J letter? I didn't, Your Honor, because they're not controlling precedent. Let's do it this way. Why don't you give the case citations? We have a slip of paper that you can fill out after you sit down and just leave those with the Court. Besides those three cases, what other point do you want to make? Your Honor, simply that this Court could affirm in favor of my client on any of those three grounds. But what is really needed, because this issue keeps coming up, for example, in the three cases that I will provide to the Court Clerk, the Court ought to establish, as every lower court in the circuit already has done when it's considered the issue, that in pari delicto is the rule, or to be more specific, that yes, bankruptcy trustees, unlike state court receivers, do step into the shoes of the debtor. And if the debtor would be barred by in pari delicto, so too is the bankruptcy trustee. As I say, no court that I'm aware of has ever ruled to the contrary, and plenty of them have considered precisely that point made by the Trustees Council, and they've expressly rejected it, and they've rejected the O'Melveny case that the trustee relies on, pointing out that case dealt with a very different animal. It dealt with receivers. Bankruptcy trustees, by contrast, step into the shoes of the debtor under 541A1 of the Code for better or worse. If the debtor had an infirmity in one of its causes of action, be it in pari delicto or even statute of limitations, the debtor gets stuck with it. Or pardon me, the bankruptcy trustee, too, is stuck with that defense. Okay. Thank you very much, Mr. Eldin. Your time has expired. Thank you very much. Thank you. Has there been a California case or a case applying California law where debt was construed to be equity? Not in this context, Your Honor. So it's never happened before? It's never been presented as an issue in a published decision. So let's say you were a lawyer and I was your client, and I come to you and say I'm interested in making a debt infusion into my subsidiary who's struggling, and I don't want to run the risk that if things don't work out at the end of the road, this will be construed equity. Tell me what I should do. Well, I think what you have to do is you have to analyze the financial instruments, condition of the company. You have to make sure that there's no other third-party financing available, which in this case there was because Pacific Western Bank kept stepping up and giving them financing. You have to make sure that there's sufficient capitalization of the company in the first place so that people can't make the charge the problem with these LBOs. Do I have to do all that before I can give my subsidiary money to pay the rent or keep the material suppliers' shipping? I think it depends on the situation. If it's a short-term loan and it gets repaid back, I don't think there's any problem with that. But if it's a long-term financing that you're never collecting on for millions of dollars, then I think that a director has an obligation to protect the company, and it has an obligation to make sure that it is complying with the law. And that is that you have to have adequate capitalization. That means, you know, I can't make a loan without retaining, you know, Sullivan and Cromwell and McKenzie. No. It's really not that hard. You pick up the phone, you call the bank, and you say, I need a loan for a million dollars. Can you give it to me? And what's the bank going to say? The bank is going to say, I want your financial statements, and we're going to give you a loan. It's really not that hard. And it's not that hard to go to look at an asset or a company that you're going to acquire and say, we need to capitalize this. What's the adequate capitalization of this? But that's not what they did. They did it as an LBO so that they could do exactly what they did. And that is, those are factual issues that need to be addressed when this gets set up. I'd like to address Judge Christian's point about our only referring to these cases, the usury cases. We do say in our brief that the law in California is substance over law, substance over form. It's over substance. You say it a lot. What did you say in front of the bankruptcy court on remand? What arguments were presented there? Well, we didn't have a lot of argument in the bankruptcy court. The transcript is in the record. Yes. The judge came up on the bench and, well, there's a history there. The judge, when the case went back down for the first time, Judge Russell took the bench and walked out and said, looked at the defendants and said, you're going to file motions to dismiss, aren't you? Because I'm going to grant it. And I said to him, with all due respect, have you read the decision? Because I thought the decision was enlightening. And Judge Russell said, no. He said, I skimmed it. Yes. I read the transcript. Okay. And you'll see it went downhill from there. Yes. So there wasn't any actual discussion about it. What happened to Claim 8, the equitable subordination claim? We agreed to dismiss it so we could get the case up to the court of appeal. Otherwise, we felt that we had to be back down there and go through a whole trial. We knew we were coming back. So that's gone. It's gone. I would like to address very briefly. I'm going to let you make one more point, but you're already two minutes over. Right. Because there was this discussion about imperi delicto. Go ahead. And, one, there's the adverse exception to their position. I think we talk about it in the brief. Number two, O'Melveny's never been decided by this court. I've had three cases up before the Ninth Circuit where this issue has been addressed. I did the Brian Cave decision, which recently came out last year, where the court avoided addressing that issue. I agree with counsel it's important to get that clarified. But I urge the Court to consider O'Melveny and Cameron. And the fact is that the trustee does not step into the shoes of the creditors. That is a – that is something that's always assumed, but it's not. He is a statutory figure, if you will, that has certain rights and powers, not only of the debtor, but as given to him by the Bankruptcy Code. And all of the clawback provisions are something that the debtor may not ordinarily have, the preference provision. So it's much more than that. Thank you very much for your attention. Thank you all. The case to start is submitted.
judges: Parker, Tallman, Christen